```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JULIO ANTONIO IPINA HERNANDEZ,                                :
                                                              :
                                  Petitioner,                 :
                                                              :      26-CV-137 (VSB)
            - against -                                       :
                                                              :      OPINION & ORDER
                                                              :
KENNETH GENALO, NYC Director                                  :
Enforcement & Removal Operations                              :
Immigration and Customs Enforcement (ICE),                    :
et al.,                                                       :
                                                              :
                                  Respondents.                :
                                                              :
-------------------------------------------------------------X
```

Appearances:

S. Michael Musa-Obregon
Musa-Obregon Law PC
Maspeth, NY
*Counsel for Petitioner*

Charles Salim Jacob
U.S. Attorney's Office, Department of Justice, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

  Before me is Julio Antonio Ipina Hernandez's ("Ipina Hernandez" or "Petitioner") petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release Petitioner from custody. (Doc. 1 ("Petition" or "Pet.").) Because I find that the Government detained Petitioner pursuant to 8 U.S.C. § 1226 and that his

detention violated his due process rights, the Petition is GRANTED, and the Government is ordered to immediately release Petitioner from custody.

## I.  Factual Background

### A.  *Petitioner's Entry Into the United States*

Ipina Hernandez is a 34-year old citizen of Guatemala, husband, and father to three children. (Pet. ¶ 4; Doc. 15 ("Reply") at 2.)  In approximately 2009,[1] Petitioner entered the United States by crossing the border without inspection and has been living in the United States ever since. (Reply 1 n.1; Docs. 14-1; 14-2; Doc. 22 ¶¶ 3, 6.)

On March 31, 2022, Customs and Border Protection ("CBP") encountered Petitioner in Vermont believing that Petitioner crossed the international border from Canada into the United States. (Opp'n 2; Doc. 14-3 (Form I-213 dated Apr. 1, 2022).)  Petitioner disputes that he left the United States and entered Canada on March 31, 2022, or at any other date, and maintains that he has resided in the United States since arriving in 2009. (Doc. 22 at ¶ 6.)  CBP detained Petitioner and released him later on that same day pursuant to an Order of Release on Recognizance. (Opp'n 2; Doc. 14-4 (Order of Release on Recognizance dated Mar. 31, 2022).)  The March 31, 2022 Order of Release on Recognizance notes that Petitioner was released "[i]n accordance with section 236" of the Immigration and Nationality Act ("INA"), (*id.*), which is

---

[1] The Government cannot determine when and where Petitioner first entered the United States, although Department of Homeland Security ("DHS") records note that "on two occasions in May 2009, an individual with Petitioner's name and date of birth was detained by CBP and voluntarily returned to Mexico."  (Doc. 14 ("Opposition" or "Opp'n") at 2; *see also* Docs. 14-1 and 14-2 (I-213 Forms dated May 15 and May 17, 2009).)  As I noted in the Order to Show Cause Hearing on February 6, 2026 ("OTSC Hearing"), the May 2009 I-213 Forms include a different date of birth and nationality than the 2022 and 2026 I-213 Forms for Petitioner.  (*Compare* Docs. 14-1 and 14-2 (listing an April 12, 1991 date of birth and Mexico as the country of birth), *with* Docs. 14-3 and 14-12 (listing a May 20, 1991 date of birth and Guatemala as the country of birth).)  Nonetheless, the Petitioner has conceded that these records relate to him, (Doc. 22 ¶ 4), and the Government agreed in the OTSC Hearing.  There is no evidence in the record that indicates where CBP detained Petitioner in 2009.  In any event, I do not need to determine the precise date or location that Petitioner entered the United States for the purposes of this Opinion & Order because there is no dispute that Petitioner was residing in the United States at the time of his detention on January 6, 2026.

codified at 8 U.S.C. § 1226. On that same day, DHS served Petitioner with a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to the INA § 212(a)(6)(A)(i), which states that a person is inadmissible if they are "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Doc. 14-5 (NTA dated Mar. 31, 2022) at 1.) The NTA specifically classified Petitioner as an immigrant "present in the United States who has not been admitted or paroled," not as an "an arriving [noncitizen]." (*Id.*) According to the NTA, Petitioner was scheduled to appear before an immigration judge on March 8, 2023 in Boston, Massachusetts. (*Id.*) On April 21, 2023, an immigration judge in New York issued an Order on a motion to dismiss, dismissing the removal proceedings against Petitioner. (Doc. 14-6.)

Petitioner's application for asylum and withholding of removal is pending, and he has an individual hearing later this month. (*See* Doc. 22.)

### B.   *Petitioner's Criminal History*

Petitioner was arrested in 2021, 2022, and 2025. On March 12, 2021, Petitioner was arrested in Patterson, New York on charges of assault in the third degree (NY Penal Law 120.00), reckless endangerment in the second degree (NY Penal Law 120.20), aggravated harassment in the second degree (NY Penal Law 240.30), and criminal mischief in the fourth degree (NY Penal Law 145.00), all of which are misdemeanors. (Doc. 14-10.) These charges were dismissed. (*See* Doc. 14-11; Reply 13; Doc 22 ¶ 9.)

On March 31, 2022, Petitioner was encountered in Swanton, Vermont, near the U.S.-Canada border and CBP arrested Petitioner on a criminal charge of Alien Smuggling, in violation of 8 U.S.C. § 1324, because he was allegedly driving an undocumented person into the United States. (*See* Opp'n 2; Doc. 14-3 (Form I-213 dated Apr. 1, 2022).) Petitioner disputes that he

3

exited the United States and entered Canada, and instead asserts that he and his friend, who lived on a ranch in Vermont, got lost in the woods after fishing in Vermont. (Reply 3; Doc. 22 ¶ 6.) The United States Attorney's Office in the District of Vermont declined prosecution. (Opp'n 3; Doc. 14-3 at 3.)

On March 30, 2025, Petitioner was arrested in Patterson, New York after being pulled over in his vehicle by police officers on Route 22. (Doc. 16-4.) Petitioner was arrested and charged with obstructing governmental administration in the second degree (NY Penal Law 195.05), resisting arrest (NY Penal Law 205.30), disorderly conduct (NY Penal Law 240.20), and for moving from a lane unsafely (NY Vehicle Traffic Law 1128). (*See* Doc. 14-11 at 2–3.) These charges are two misdemeanors, a violation, and an infraction. (*See id.*) This case remains open. (*See* Doc. 14-11; Reply 12.)

### C. *Petitioner's Detention*

On January 6, 2026, Ipina Hernandez accompanied his brother to meet with a detective from the Sheriff's office in Carmel, New York regarding an identity theft complaint in a Home Depot parking lot in Brewster, New York—a meeting point chosen by the detective. (Pet. ¶¶ 5–6.) After meeting with the detective regarding the identity theft complaint, immigration officers arrested Ipina Hernandez. (*Id.* ¶ 6.)

Ipina Hernandez was served with an arrest warrant[2] citing INA § 236—codified as 8 U.S.C. § 1226—as its basis.[3] (Doc. 14-8 ("Arrest Warrant").) The Arrest Warrant notes that the determination that Ipina Hernandez was removable was based upon "statements made

---

[2] The Arrest Warrant states that it was served on Petitioner in Newburgh, New York, and not Brewster, New York, where Petitioner was arrested. (*See* Arrest Warrant.) The parties dispute the specific timing of the Arrest Warrant, but I need not decide this factual dispute for the purpose of this Opinion & Order.

[3] The Arrest Warrant specifically directs Petitioner's arrest by "[a]ny immigration officer authorized pursuant to section 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Arrest Warrant 1.)

voluntarily by the subject to an immigration officers and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (*Id.*)  Ipina Hernandez was not provided with advanced notice that he was going to be arrested.

At some point after being detained in the Brewster, New York parking lot, Petitioner was transported to Orange County Correctional Facility.  (Pet. ¶ 7.)  Petitioner was subsequently moved to Metropolitan Detention Center in Brooklyn, New York, (Opp'n 2), where he is currently detained without a bond hearing or any individualized custody determination.  (*See* ICE Online Detainee Locator System, available at https://locator.ice.gov/odls/#/search, (A-Number: 213-638-063; Country of Birth: Guatemala) (last visited Feb. 22, 2026).)

## II.    Procedural History

On January 7, 2026 at 11:40 P.M. Eastern Standard Time, Petitioner's counsel filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (*See* Pet.)  On January 8, 2026, I issued an Order to Show Cause, directing Respondents and Petitioner's counsel to attend an initial telephonic conference on January 9, 2026 to discuss venue and the relevant detention provisions.  (Doc. 5.)  On the January 9, 2026 telephonic conference, the parties proposed submitting simultaneous briefing the following Tuesday, January 13, 2026.  On January 13, 2026, the parties requested an extension for the submission of their joint letter until January 16, 2026, (Doc. 7), which I subsequently granted, (Doc. 8).  On January 16, 2026, Petitioner filed a letter requesting an extension for the submission of the joint letter until January 20, 2026, (Doc. 9), which I subsequently granted, (Doc. 10).  On January 20, 2026, Petitioner filed a letter requesting an extension for the submission of the joint letter until January 23, 2026, (Doc. 11), which I subsequently granted, (Doc. 12).

On January 23, 2026, the Government filed its Opposition to the Petition, (*see* Opp'n), along with several exhibits in support: a Form I-213 Record of Deportable/Inadmissible Alien dated May 15, 2009, (Doc. 14-1); a Form I-213 Record of Deportable/Inadmissible Alien dated May 17, 2009, (Doc. 14-2); a Form I-213 Record of Deportable/Inadmissible Alien dated April 1, 2022, (Doc. 14-3); an Order of Release on Recognizance dated March 31, 2022, (Doc. 14-4); a NTA dated March 31, 2022, (Doc. 14-5); an Order on Motion to Dismiss from the New York Immigration Court dated April 21, 2023 (Doc. 14-6); a Form I-213 Record of Deportable/Inadmissible Alien dated January 6, 2026, (Doc. 14-7); a Form I-200 Arrest Warrant dated January 6, 2026, (Doc. 14-8); a NTA dated January 6, 2026, (Doc. 14-9); two Repository Inquiries, (Docs. 14-10, 14-11); and a Form I-213 Record of Deportable/Inadmissible Alien dated March 12, 2021, (Doc. 14-12). The Government also explained that "[t]o conserve judicial resources," they "rel[y] upon, and incorporate[] by reference" the arguments they made in *Han v. Bondi*, No. 25-CV-10753 (S.D.N.Y. 2025) and *Chen v. Almodovar*, No. 25-CV-9670 (S.D.N.Y. 2025), and attached those submissions. (Doc. 14 at 3–4; Doc. 14-13; Doc. 14-14.) The Government's Opposition asserts its position that Petitioner is detained under § 1225(b)(2) and that his detention is mandatory. (Opp'n 3–4.)

On January 26, 2026, Petitioner filed a letter in reply to the Petition, (*see* Reply[4]), and attached several exhibits, (Doc. 16), including: several letters in support of Petitioner's moral character, which indicate that he is a great husband, father, and member of the community, (Doc. 16-1); the Arrest Warrant, Form I-213 Record of Deportable/Inadmissible Alien dated March 12, 2021, a NTA dated January 6, 2026, a March 31, 2022 Order of Release on Recognizance, a

---

[4] Pursuant to the discussion at the January 9, 2026 initial telephonic conference, Petitioner and the Government agreed to file a joint letter setting forth their position, which was due, after three extensions, on January 23, 2026. While the Government filed the Opposition on January 23, Petitioner filed his Reply on January 26, without seeking leave for an extension of time. Nonetheless, I consider Petitioner's belated Reply.

6

Form I-213 Record of Deportable/Inadmissible Alien dated January 6, 2026, and an Order on Motion to Dismiss from the New York Immigration Court dated April 21, 2023, (Doc. 16-2); medical records and evaluations for one of Petitioner's children, (Doc. 16-3); and summonses directing Petitioner to appear in Patterson Town Court for two misdemeanors and a violation, (Doc. 16-4). Petitioner asserts that he has been continuously present in the United States since 2009, the other cases in this District that rule in favor of the petitioners should control, and that he is not subject to mandatory detention under 8 U.S.C. § 1225, only discretionary detention under 8 U.S.C. 1226(a). (*See generally* Reply.)

On February 4, 2026, I issued an order directing the parties to be prepared to discuss certain questions at the OTSC Hearing. (Doc. 19.) On February 5, 2026, the Government filed a letter acknowledging that my recent decision in *Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929 (S.D.N.Y. Jan. 30, 2026) "would control the result in this case if [I] adhere[] to those holdings here, as the government acknowledges that those holdings would apply to the facts of this case." (Doc. 20 at 1.) The Government states that "while [it] respectfully disagrees with [my] holdings in *Sidqui*," the reasoning in *Sidqui* "would control the result in this case if [I] adhere[] to those holdings, as the reasoning in that case would apply to the facts of this case on dispositive legal issues." (*Id.* at 2.) On February 6, 2026, Petitioner filed a letter, along with two exhibits, in response to my February 4, 2026 order. (Docs. 22, 22-1, 22-2.) Later that same day, I held the OTSC Hearing where the parties discussed responses to several of my questions in my February 4, 2026 order. In the OSTC Hearing, the parties agreed that my decision in *Han v. Bondi*, No. 25-CV-10753, 2026 WL 322963 (S.D.N.Y. Feb. 6, 2026), issued earlier that day, likewise controls and is dispositive of the statutory issue here.

7

### III.     Legal Standard

Ipina Hernandez brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

### IV.     Discussion

The Government's Opposition concedes that "the disputed legal issues regarding statutory detention authority in this habeas action are identical to the dispute between the [P]etitioner and ICE in a different habeas case that is presently sub judice before [me]: *Han v. Bondi, et al.*, No. 25 Civ. 10753." (Opp'n 3.)  Accordingly, "the Government acknowledges that [my] decision in *Han* will resolve the legal issue in this case," and the Government "relies upon, and incorporates by reference, the arguments made in the Government's opposition in *Han*, including the legal brief submitted with that opposition." (*Id.* at 3–4; *see also* Docs. 14-13, 14-14.)[5]

---

[5] The Government also notes that Judge John P. Cronan adopted their position in *Chen v. Almodovar*, No. 25-CV-9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026).  I note that although the Second Circuit has not addressed this

8

On February 6, 2026, I issued my decision in *Han*, which decided the same statutory issue raised here.[6] 2026 WL 322963, at *4–7. My decision in *Han* controls the statutory issue in this case because I adhere to my prior decision regarding the Respondents' statutory authority to detain a petitioner that is living in the United States at the time of detention. For the reasons stated in *Han* and by several other courts in this District, I conclude that Ipina Hernandez, who has been living in the United States since 2009, was not subject to mandatory detention under 8 U.S.C. § 1225(b), and instead is detained under the discretionary provision of § 1226(a). *Id.* at *5–7. I agree with the "overwhelming majority of opinions in this District and others across the country [that] have held that § 1226, not § 1225, governs the process of arresting and detaining noncitizens who are already present in the United States." *Id.* at *4. Section 1225(b)(2) applies only to noncitizens actively "seeking admission" to the United States, and not to individuals like Ipina Hernandez who have already entered and have been residing in the country because he "can't go into a place where [he] already [is]." *Id.* at *5 (alteration in original) (quoting *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)). "To assume otherwise would mean that millions of immigrants living in the United States should be mandatorily detained as if they are on the cusp of our nation's borders." *Id.* This is not the case as many, if not all, of these immigrants have been living in the United States, in some cases for

---

statutory question, the Seventh Circuit concluded that a respondent was not likely to prevail on the merits that the noncitizen was subject to mandatory detention under § 1225(b)(2) because "the definition of an 'applicant for admission'" is "limit[ed]" to "'an alien present in the United States who has not been admitted or who arrives in the United States,'" which is not the same as a noncitizen "seeking admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025) (quoting 8 U.S.C. § 1225(a)(1)). In contrast, the Fifth Circuit recently concluded that "'seeking admission' is equivalent to being an 'applicant for admission'" and determined that the noncitizens there were subject to mandatory detention under § 1225(b)(2). *Buenrostro-Mendez v. Bondi*, --- F.4th ---, No. 25-20496, 25-40701, 2026 WL 323330, at *1, *4–7 (5th Cir. Feb. 6, 2026). As I noted in *Han*, Judge Cronan's opinion in *Chen*, 2026 WL 100761, is not binding on me, and I do not find the interpretation in *Chen* persuasive. 2026 WL 322963, at *6. The same holds true for the Fifth Circuit's decision in *Buenrostro-Mendez*.

[6] The parties agreed during the OTSC Hearing that the instant Petition is controlled by my prior opinion in *Han*, 2026 WL 322963.

9

many decades. Moreover, "it would be remiss of me to ignore decades of immigration law that has acknowledged the difference between those at the border and those in the interior of the country." *Id.* at *7 (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025)).

Having determined that Ipina Hernandez is detained pursuant to § 1226(a), I conclude that the Government's detention of Ipina Hernandez, without any individualized consideration, violates his due process rights. Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding" before detaining him. 8 C.F.R. § 1236.1(c)(8). The Opposition does not even assert that the Government provided Ipina Hernandez with any process; instead it simply discusses the Government's position regarding the statutory authority for Petitioner's detention and their position regarding Petitioner's risk of flight and danger to the community. (*See* Opp'n.) The parties agreed at the OTSC Hearing that Petitioner was arrested by ICE after he met with the Sheriff's office to discuss the identity theft complaint. The Form I-213 Record of Deportable/Inadmissible Alien dated January 6, 2026 notes that "[o]fficers positively identified the male subject as IPINA, the target of the investigation," (Doc. 14-7 at 3), and the Government's counsel mentioned in the OTSC Hearing that Petitioner was detained as part of an investigation. The Government did not provide any details concerning the purported investigation. The Government does not allege that ICE considered whether Petitioner was a flight risk or danger to the community before detaining him. Simply stating that the Sheriff's office, a separate entity, was investigating at the time of Petitioner's detention by ICE does not satisfy the Due Process requirement of an individualized determination prior to detention. Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Ipina

Hernandez.  *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original).  Accordingly, Ipina Hernandez's detention violates his due process rights.  *See Han*, 2026 WL 322963, at *7 (determining that the petitioner's due process rights were violated where there was no evidence of an individualized determination prior to detaining the petitioner); *Tejeda-Mata v. Francis*, No. 26-CV-658, 2026 WL 221276, at *2 (S.D.N.Y. Jan. 28, 2026) ("Respondents have violated th[e] fundamental mandate [in the Due Process Clause], as Petitioner has been detained without notice or an opportunity to be heard.  The remedy for this violation is release from custody."); *Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025) (determining that the petitioner's due process rights were violated because she was detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond" (internal quotation marks omitted)).

Finally, an individualized bond hearing in front of an immigration judge is not required before I grant Petitioner's requested relief of immediate release from custody.  Although the Government asserts that "ICE nevertheless has authority to detain Petitioner pursuant to § 1226(a), and Petitioner may then request a bond hearing before an Immigration Judge," (Opp'n 4), I excuse Petitioner's failure to administratively exhaust his remedy before challenging his detention because "a bond hearing [cannot] retrospectively cure the due process violation, which derived from [Petitioner's] unlawful arrest and detention without the statutorily required exercise of discretion," *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (citing *Tumba Huamani*, 2025 WL 3079014, at *7–9).  *See also Ambroladze v. Maldonado*, 26-CV-00474, 2026 WL 280182, at *3 (E.D.N.Y. Feb. 3, 2026) ([B]ecause the 'typical remedy' for 'unlawful executive detention' is 'of course, release,' the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles

11

him to immediate release." (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008))).  Indeed, directing a bond hearing at this juncture, as the Government suggests, would prolong Petitioner's detention and therefore exacerbate the violation of his due process rights.  Although I need not make a determination on Petitioner's risk of flight and danger to the community, I note that I find the Government's position unpersuasive.  Petitioner established a "one-man agency" in New York and Vermont eleven years ago where he "accompanies immigrants to a myriad of places to help them access services and conduct business, such as seeing doctors, finding lawyers, obtaining workers' compensation benefits, incorporating businesses, applying for driver's licenses, and getting Social Security," "[m]any of his clients are immigrants who live on Vermont ranches and are cut off from public life by physical distance, language barriers, and a lack of family, so they depend heavily on him," and Petitioner lives with his wife and three young children in New York, including, a six-year-old child with special needs and an Individualized Education Program.  (Reply 2).  Moreover, the March 12, 2021 misdemeanor charges were dismissed, (*see* Opp'n 3; Docs. 14-10, 14-11), the Government was aware of those charges and still released Petitioner on his own recognizance in 2022, (*see* Opp'n 3; Doc. 14-4), and an Immigration Judge dismissed the removal proceedings against Petitioner, (Doc. 14-6).  The March 30, 2025 charges were misdemeanors, a violation, and an infraction related to a vehicular stop, (*see* Doc. 14-11), and do not on their face suggest that Petitioner presents any danger to the community.  In any event, as noted, "the harm began when Petitioner was detained without process and continues with each day he remains in custody."  *Han*, 2026 WL 322963, at *8.  Thus, the Government must immediately release Ipina Hernandez from detention.

12

## V. <u>Conclusion</u>

Therefore, the Petition for a writ of habeas corpus is GRANTED. Respondents are hereby ORDERED to immediately release Petitioner from custody and certify compliance with this order by filing an entry on the docket no later than **5:00 p.m. on February 23, 2026**.

IT IS FURTHER ORDERED that Petitioner "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *17 (E.D.N.Y. Oct. 6, 2025). *Cf. Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b) and from invoking in that proceeding the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), *Rueda Torres*, 2025 WL 3168759, at *6, absent a change in controlling law.

Respondents did not address Petitioner's request for attorney's fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 in their Opposition. Thus, if Petitioner still intends on seeking such relief, Petitioner may file a status letter proposing a briefing schedule for any application for attorneys' fees and costs by **April 27, 2026**.

The Clerk of Court is respectfully directed to terminate the open motions at Doc. 3 and Doc. 4.

SO ORDERED.

Dated: February 22, 2026
      New York, New York

Vernon S. Broderick
United States District Judge